UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST,<br><br>Plaintiff(s),<br><br>v.<br><br>STEWART INFORMATION SYSTEMS CORP., et al.,<br><br>Defendant(s). | Case No. 2:21-CV-1875 JCM (BNW)<br><br>ORDER |

Presently before the court is plaintiff U.S. Bank National Association's ("U.S. Bank") motion to remand this matter to state court. (ECF No. 9). Defendants Stewart Information Services, Corp. ("Stewart Corp.") and Stewart Title Guaranty Company ("Stewart Title") filed a response (ECF No. 20), to which U.S. Bank replied (ECF No. 21).

Also before the court is Stewart Corp.'s motion to dismiss the complaint as to Stewart Corp. for lack of personal jurisdiction. (ECF No. 4). U.S. Bank filed a response (ECF No. 17), to which Stewart Corp. replied (ECF No. 19).

**I.    Background**

In February of 2006, Robert Salvador obtained a loan from Countrywide Bank, N.A. for $263,112.00. On March 2, 2006, a deed of trust securing the loan was recorded on real property located at 479 N. Sand Crane Circle, Sparks, Nevada 89436. That same day, Countrywide secured a lender's title insurance policy from Stewart Title in connection with the deed of trust.

The Sand Crane property is subject to a homeowner's association ("HOA") declaration of covenants, conditions, and restrictions ("CC&Rs"). On July 30, 2012, the HOA's agent recorded

**James C. Mahan**
**U.S. District Judge**

1   a lien on the property because of Salvador's failure to pay assessments owed to the HOA. On
2   December 18, 2012, the HOA's agent recorded a notice of default and election to sell under the
3   HOA lien. On October 24, 2013, SFR Investments Pool 1, LLC ("SFR") purchased the property
4   at a Nevada Revised Statutes chapter 116 foreclosure sale.

5   In November of 2014, a title claim under the policy was submitted to Stewart Title,
6   asserting loss of the deed of trust from the chapter 116 foreclosure on the HOA lien. On
7   September 15, 2017, Stewart Title denied coverage, claiming that it was prejudiced when the
8   insured lender failed to tender the claim to it prior to the completion of the foreclosure. Rather
9   than defending and indemnifying under the policy, Stewart Title issued a check for $2,850, the
10  amount of delinquent HOA assessments.

11  On November 25, 2019, the deed of trust, promissory note, and all indebtedness due
12  thereunder was assigned to U.S. Bank. On October 23, 2020, SFR filed a quiet title action
13  against U.S. Bank in the District of Nevada, case no. 3:20-cv-00604-LRH-WGC (the
14  "underlying litigation") regarding the same property and deed of trust. On November 10, 2020,
15  SFR obtained a preliminary injunction enjoining U.S. Bank from foreclosing under the deed of
16  trust pending resolution of the underlying litigation. As of the writing of this order, the
17  underlying litigation is stayed pending the Nevada Supreme Court's decision in a related matter,
18  *U.S. Bank, N.A. v. Thunder Properties, Inc.*, case no. 81129.

19  On September 14, 2021, U.S. Bank filed its complaint for this matter in Nevada state
20  court asserting claims against Stewart Title and its parent company Stewart Corp. for declaratory
21  judgment, breach of contract, breach of the covenant of good faith and fair dealing, deceptive
22  trade practices, and for violating Nevada Revised Statute 686A.310. On October 11, 2021,
23  Stewart Corp. and Stewart Title removed this matter to this court on the basis of diversity
24  jurisdiction.

25  U.S. Bank now moves this court to remand this matter back to state court because the
26  amount in controversy does not exceed $75,000. Conversely, Stewart Corp. now moves this
27  court to dismiss the complaint against it because this court lacks personal jurisdiction over
28  Stewart Corp.

**James C. Mahan**
**U.S. District Judge**

- 2 -

## II. Legal Standard

### A. Motion to remand

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

For a United States district court to have diversity jurisdiction under 28 U.S.C. § 1332, the parties must be completely diverse and the amount in controversy must exceed $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1098 (9th Cir. 2003). A removing defendant has the burden to prove by a preponderance of the evidence that the jurisdictional amount is met. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996).

A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c). On a motion to remand, the removing defendant must overcome the "strong presumption against removal jurisdiction" and establish that removal is proper. *Hunter*, 582 F.3d at 1042 (quoting *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992) (per curiam)). Due to this strong presumption against removal jurisdiction, the court resolves all ambiguity in favor of remand to state court. *Id.*

### B. Motion to dismiss for lack of personal jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a complaint for lack of personal jurisdiction. *See* FED. R. CIV. P. 12(b)(2). To avoid dismissal under Rule 12(b)(2), a plaintiff bears the burden of demonstrating that its allegations establish a *prima facie* case for personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Uncontroverted allegations in the complaint must be taken as true, and factual

disputes should be construed in the plaintiff's favor. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

Personal jurisdiction is a two-prong analysis. First, an assertion of personal jurisdiction must comport with due process. *See Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Next, "[w]hen no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015; *see also Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). However, Nevada's "long-arm" statute applies to the full extent permitted by the due process clause, so the inquiry is the same, and the court need only address federal due process standards. *See Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing NEV. REV. STAT. § 14.065); *see also Boschetto*, 539 F.3d at 1015.

Two categories of personal jurisdiction exist: (1) general jurisdiction and (2) specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–15 (1984); *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

The Ninth Circuit has a three-prong test for specific jurisdiction: (1) the nonresident defendant "must purposefully direct his activities or consummate some transaction with the forum . . . or perform some act by which [it] purposefully avails [itself] of the privilege[s], . . . benefits, and protections" of the forum state; (2) the plaintiff's claims must "arise out of or relate to the defendant's forum-related activities"; and (3) the exercise of jurisdiction must "comport with fair play and substantial justice, i.e., it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

"Mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Lang v. Morris*, 823 F. Supp. 2d 966, 969–70 (N.D. Cal. 2011) (quoting *Fiore v. Walden*, 657 F.3d 838, 846–47 (9th Cir. 2011)). If the plaintiff meets the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of personal jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (enumerating factors like

1 convenient and effective relief for the plaintiff, burden on the defendant, the forum's interest in
2 adjudicating the dispute, and the most efficient judicial resolution).

3 **III.   Discussion**

4     A.  Motion to remand

5 In determining the amount in controversy, the court's "starting point is whether it is facially apparent from the complaint that the jurisdictional amount is in controversy." *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 998 (9th Cir. 2007).  "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003) (per curiam).  Additionally, the "amount-in-controversy inquiry in the removal context is not confined to the face of the complaint," and the parties can offer any "summary-judgement-type evidence" to support their positions.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

Here, U.S. Bank does not plead a specific amount of damages.  Its prayer for relief requests declaratory judgment and unspecified amounts of compensatory damages, punitive damages, and attorney's fees and costs.  (*See* ECF No. 1-1).  As a result, it is not evident from the face of U.S. Bank's complaint that the amount in controversy exceeds $75,000.  Thus, the court considers the parties' summary-judgment-type evidence.  *See Valdez*, 372 F.3d at 1117.

Stewart Corp. argues that U.S. Bank's request for declaratory relief puts $263,112.06 in controversy because "should [U.S.] Bank lose the [u]nderlying [l]itigation, the Bank will also seek indemnification for loss . . . up to the [a]mount of [i]nsurance ($263,112.06.)."  (ECF No. 20 at 5).  U.S. Bank argues that the amount of insurance is not in controversy as it is relevant only for indemnification and "[a] value for indemnification cannot be determined yet because the [underlying] litigation is ongoing."  (ECF No. 9 at 3).  Additionally, U.S. Bank argues that it is not seeking indemnification at this time because the deed of trust at issue in the underlying litigation "is still a valid encumbrance on title."  (ECF No. 21 at 2).

**James C. Mahan
U.S. District Judge**

- 5 -

For declaratory relief actions, "the amount in controversy for diversity jurisdiction purposes is 'the value of the object of the litigation.' When an insurer contests the applicability of its liability coverage to a particular issue, the value of the object in litigation is 'the value of the underlying potential tort action.'" *Cincinnati Specialty Underwriters Ins. Co. v. Red Rock Hounds*, 511 F. Supp. 3d 1105, 1110 (D. Nev. 2021) (first quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); then quoting *Budget Rent-a-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997)); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) ("The amount in controversy is 'not a prospective assessment of [a] defendant's liability.' Rather, it is the 'amount at stake in the underlying litigation.'").

Here, U.S. Bank's complaint seeks a declaration establishing that the title insurance policy issued by Stewart Title "provided coverage for all losses or damages, up to the [a]mount of [i]nsurance . . . ." (ECF No. 1-1 at 27). The subject title insurance policy—attached to U.S. Bank's complaint as Exhibit 1—lists the "[a]mount of [i]nsurance" as $263,112.00. (*Id.* at 29). Further, while U.S. Bank argues that this matter concerns only defendants' breaching their duty to defend, U.S. Bank's complaint specifically alleges that Stewart Corp. and Stewart Title "breached the [p]olicy by refusing to indemnify U.S. Bank for its covered losses." (*Id.* at 22 ¶ 119).

Regardless of the result of the underlying litigation, U.S. Bank presently asks this court to declare that U.S. Bank is entitled to up to $263,112.00 under the title insurance policy. Thus, Stewart Corp. shows by a preponderance of the evidence that the amount "at stake" in this matter exceeds $75,000.

Accordingly, the court DENIES U.S. Bank's motion to remand. (ECF No. 9).

B.  <u>Motion to dismiss for lack of personal jurisdiction</u>

Though this court has subject matter jurisdiction over this litigation, Stewart Corp. argues that this court lacks personal jurisdiction over Stewart Corp. because it "does not conduct any business in Nevada, is not licensed in Nevada, and is not authorized to do business in Nevada." (ECF No. 4 at 2). Stewart Corp. further argues that its role as the Stewart Title's parent company is "insufficient to establish personal jurisdiction over [Stewart Corp.] in Nevada." (*Id.*).

**James C. Mahan**
**U.S. District Judge**

U.S. Bank argues that while Stewart Corp. has no direct contacts with Nevada regarding the title insurance policy, the contacts of Stewart Title are imputed to Stewart Corp. for U.S. Bank's breach of contract claims because Stewart Title is Stewart Corp.'s agent, alter ego, and/or engaged in a joint venture with Stewart Corp.  Further, U.S. Bank argues that Stewart Corp.'s independent contacts with Nevada establish personal jurisdiction over Stewart Corp. for U.S. Bank's deceptive trade practices claim.  (*See* ECF No. 17 at 4).

The court addresses each of U.S. Bank's arguments in turn.

*1.  U.S. Bank fails to show an agency relationship*

First, U.S. Bank argues that Stewart Title's contacts with Nevada are imputed to Stewart Corp. because Stewart Title merely acted as Stewart Corp.'s agent in denying U.S. Bank's claim for coverage.  (ECF No. 17 at 5).

In Nevada, a parent's control over a subsidiary must be substantial to impute specific personal jurisdiction.  *Viega GmbH v. Eighth Judicial Dist. Court of the State*, 130 Nev. 368, 378-79, 328 P.3d 1152, 1159 (2014) ("[T]he control at issue must not only be of a degree 'more pervasive than . . . common features' of ownership, 'it must veer into management by the exercise of control over the internal affairs of the subsidiary and the determination of how the company will be operated on a day-to-day basis,' such that the parent has 'moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy.'" (quoting *F. Hoffman–La Roche, Ltd. v. Superior Court*, 30 Cal. Rptr. 3d 407 at 418–19 (Cal. 2005))).

Here, U.S. Bank alleges that "Stewart [Corp.] exerts control over its subsidiaries, including Stewart Title, by determining the terms and conditions upon which they will insure title to real property, dictating policies and procedures that govern how they will evaluate claims, and directing them to deny certain categories of claims."  (ECF No. 1-1 ¶ 21).

Further, U.S. Bank alleges that Stewart Corp.'s claims department "processes claims submitted under title insurance policies underwritten by all of Stewart [Corp.]'s wholly owned subsidiaries, including Stewart Title," and that Stewart Corp. provides its claims department

**James C. Mahan**
**U.S. District Judge**

- 7 -

"with instructions and other claims handling guidance, including directives as to which position the subsidiaries should take as to coverage on a claim." (*Id.* ¶ 22).

Stewart Corp. argues that these allegations are insufficient to establish agency because they are contradicted by a declaration from its "controller," Brian Glaze. (ECF No. 4-1). Specifically, Glaze declares that Stewart Corp. has "no role or involvement in the issuance of the [p]olicy or making or facilitating the [c]laim [d]etermination that is the subject of this action," and that Stewart Corp. "is not involved in any of [Stewart Title]'s coverage decisions under insurance policies . . . ." (*Id.* ¶¶ 9–10).

In response, U.S. Bank dismisses Glaze's declaration as self-serving, and again cites to its complaint to support that Stewart Corp. is Stewart Title's principal. (ECF No. 17 at 6 (citing ECF No. 1-1 ¶¶ 21–22)). However, as Stewart Corp. properly argues, when determining a motion to dismiss for lack of personal jurisdiction, courts may not "assume the truth of allegations in a pleading which are contradicted by affidavit." *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852 (9th Cir. 2022) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("If only one side of the conflict was supported by affidavit, our task would be relatively easy, for we may not assume the truth of allegations in a pleading which are contradicted by affidavit.")).

Absent an affidavit or declaration disputing Glaze's declaration, U.S. Bank's allegations fail to show that Stewart Corp. has "moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of [Stewart Title]'s day-to-day operations in carrying out that policy." *Viega GmbH*, 130 Nev. at 378–79 (quoting *F. Hoffman–La Roche*, 30 Cal. Rptr. 3d at 418–19). Rather, U.S. Bank's allegations arise to the level commonly associated with wholly owned subsidiaries—that Stewart Corp. sets broad goals and policies along with instructions, procedures, and directives to best help its subsidiaries achieve those goals and match those policies.

Accordingly, for purposes of this Rule 12(b)(2) motion, U.S. Bank fails to show an agency relationship between Stewart Corp. and Stewart Title.

. . .

James C. Mahan
U.S. District Judge

- 8 -

###### 2. *U.S. Bank fails to show an alter ego relationship*

Similarly, U.S. Bank fails to support its allegations that Stewart Title is merely Stewart Corp.'s alter ego. The alter ego doctrine requires a plaintiff to allege that "(1) the corporation must be influenced and governed by the [other corporation] asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction [a] fraud or promote injustice." *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 846–47 (Nev. 2000) (citing *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 886 (Nev. 1987); *see Ranza v. Nike*, 793 F.3d 1059, 1073 (9th Cir. 2015) (requiring the second and third elements of the Nevada alter ego test). "However, it should be emphasized that 'the corporate cloak is not lightly thrown aside' and that the alter ego doctrine is an exception to the general rule recognizing corporate independence." *LFC Mktg. Group, Inc. v. Loomis*, 116 Nev. 896, 903–04 (Nev. 2000).

The first prong of the alter ego doctrine requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1073 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)) (internal quotations omitted). However, the Ninth Circuit has noted that "[a] parent corporation may be directly involved in financing and macro-management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is merely its alter ego." *Unocal Corp.*, 248 F.3d at 927 (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459–60 (2d Cir.1995)).

Thus, U.S. Bank must present evidence of Stewart Corp.'s "pervasive control over" Stewart Title, such as that it "dictates every facet" of Stewart Title's business—"from broad policy decisions to routine matters of day-to-day operation." *Ranza*, 793 F.3d at 1073 (internal quotation marks and citation omitted).

Here, as with agency, U.S. Bank does not submit any affidavit or declaration along with its response. Instead, it stands on the allegations contained in its complaint. Absent affidavit or declaration, the court may not assume the truth of U.S. Bank's allegation that Stewart Corp.'s "[c]laims [d]epartment processes claims submitted under title insurance policies underwritten by

James C. Mahan
U.S. District Judge

- 9 -

all of Stewart [Corp.]'s wholly owned subsidiaries, including Stewart Title," (ECF No. 1-1 at 8 ¶ 22), when Glaze declares that Stewart Corp. "does not have a [c]laims [d]epartment," "had no role or involvement in the issuance of the [p]olicy or making or facilitating the [c]laim [d]etermination," and "observe[s] all corporate formalities with respect to maintaining the separateness of" Stewart Corp. and Stewart Title. (ECF No. 4-1 ¶¶ 6, 9, 15).

Accordingly, U.S. Bank fails to show an alter ego relationship between Stewart Corp. and Stewart Title.[1]

### 3. *U.S. Bank fails to show a joint venture existed*

U.S. Bank next argues that Stewart Corp. is liable under the title insurance policy as a non-party to the contract because Stewart Corp. engaged in a joint venture with Stewart Title. (ECF No. 17 at 9 (citing *Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249, 1262 (1998))). U.S. Bank argues that a joint venture exists because "Stewart [Corp.] controlled Stewart Title's underwriting, coverage positions, and claims-handling process. . . . [And] had a direct pecuniary interest in outcome of the claim." (*Id.* at 10). Stewart Corp. argues that U.S. Bank has no legal basis for its argument because *Bartgis* is inapplicable to Stewart Corp., which is not an insurer. The court agrees with Stewart Corp.

In *Bartgis*, the Nevada supreme court held that a claims administrator was liable to an insurance contract as a non-party because it engaged in a joint venture with an insurer. However, the claims administrator in *Bartgis* worked directly with the insurer to market and administer the insurer's policy. Further, the claims administrator negotiated policies on behalf of its clients, directly communicated the insurer's policy options and changes with the plaintiff, and acted as the point of contact between the plaintiff and the insurer for disputes with policy coverage. *See Bartgis*, 114 Nev. 1249.

---

[1] Even taking U.S. Bank's allegations as true, those allegations fall short of establishing an alter ego relationship. That Stewart Corp.'s claims department intakes and processes incoming claims for Stewart Title does not mean Stewart Title is a mere instrumentality of Stewart Corp. That Stewart Corp. provides its claims department with "instructions and other claims handling guidance" (ECF No. 1-1 at 8 ¶ 21) does not mean Stewart Corp. has taken over the day-to-day operations of Stewart Title.

**James C. Mahan**
**U.S. District Judge**

- 10 -

Here, Stewart Corp. had no special relationship with U.S. Bank or its predecessor, did not market, sell, or issue the title insurance policy offered by Stewart Title, and did not directly communicate with U.S. Bank or its predecessor regarding the policy on behalf of Stewart Title. Absent such factors, Stewart Corp.'s direct pecuniary interest in the policy by way of being Stewart Title's parent company does alone not mean that it engaged in a joint venture with Stewart Title.

Accordingly, U.S. Bank fails to show that Stewart Corp. and Stewart Title engaged in a joint venture.

### 4. *U.S. Bank fails to show personal jurisdiction for its Nevada deceptive trade practices claim*

U.S. Bank's arguments regarding Stewart Corp.'s direct contacts and liability under NRS 41.600(4) are unavailing. While U.S. Bank claims to have alleged that "Stewart [Corp.] itself represented to the public and to U.S. Bank" certain coverage under the policy that Stewart Title later denied, U.S. Bank's complaint contains no such allegation. (ECF No. 17 at 11).

In its complaint, U.S. Bank alleges that "[a]ll [d]efendants exchanged memoranda, bulletins, underwritings guides, and other communications indicating that Form 100 would provide coverage . . . ," (ECF No. 1-1 ¶ 134), then that "[o]n information and belief, Stewart Title . . . represented to the [i]nsured that the CC&Rs did protect the Deed of Trust from extinguishment," (*Id.* ¶ 136), and then that "U.S. Bank relied to its detriment upon [d]efendant's representations that Form 100 would provide such coverage . . . . [and] that the CC&Rs contained a mortgage savings clause . . . ." (*Id.* ¶¶ 137–38).

Despite its arguments, U.S. Bank does not allege that Stewart Corp. directly made any representations to the public or to U.S. Bank. Instead, its allegations regarding Stewart Corp.'s conduct are again through U.S. Bank's allegations that "[d]efendants are alter egos for the purpose of liability . . . or are otherwise engaged in a joint venture." (*E.g., id.* ¶ 132). Yet, as previously discussed, U.S. Bank fails to show that any such relationship existed between Stewart Corp. and Stewart Title.

Accordingly, U.S. Bank fails to show that this court has personal jurisdiction over Stewart Corp. though direct liability.

**James C. Mahan**
**U.S. District Judge**

Similarly, U.S. Bank's remaining arguments regarding specific jurisdiction rely on the presumption that Stewart Title's contacts with Nevada are imputed to Stewart Corp. through a theory of agency, alter ego, or joint venture. As U.S. Bank fails to prove any of those theories, its complaint is dismissed as to Stewart Corp. for lack of personal jurisdiction.

C. <u>Leave to amend</u>

To the extent that the court grants Stewart Corp.'s motion to dismiss, U.S. Bank requests leave to amend its complaint. (ECF No. 17 at 19). Under Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 655 (9th Cir.) (quoting *Thinket Ink Info Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)). "An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Id.* (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)).

Here, the court is not convinced that "no set of facts" could constitute a valid claim. Therefore, the court GRANTS U.S. Bank leave to amend its complaint.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that U.S. Bank's motion to remand (ECF No. 9) be, and the same hereby is, DENIED.

. . .

. . .

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 12 -

1    IT IS FURTHER ORDERED that Stewart Corp.'s motion to dismiss for lack of personal
2 jurisdiction (ECF No. 4) be, and the same hereby is, GRANTED.  U.S. Bank's complaint is
3 DISMISSED as to Stewart Corp., with leave to amend.  U.S. Bank has 21 days from the date of
4 this order to file an amended pleading.
5    DATED February 4, 2022.

                                             _____
                                             UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**