UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST,<br><br>Plaintiff(s),<br><br>v.<br><br>STEWART INFORMATION SYSTEMS CORP., et al.,<br><br>Defendant(s). | Case No. 2:21-CV-1875 JCM (BNW)<br><br>ORDER |

Presently before the court is plaintiff U.S. National Bank Association (the "bank")'s motion to reconsider this court's order dismissing its claims against defendant Stewart Title Insurance Group ("STGC"). (ECF No. 37). STGC filed a response (ECF No. 38), to which the bank replied (ECF No. 39).

Also before the court is the bank's motion for leave to file supplemental authority. (ECF No. 40). STGC filed a response (ECF No. 41), to which the bank replied (ECF No. 43).

I.   **Background**

This dispute concerns a title insurance contract for the real property located at 479 N. Sand Crane Circle, Sparks, Nevada 89436 (the "property"). (ECF No. 1-1 at 11). In June 2004, Robert Salvador ("borrower") obtained a loan from Countrywide bank, N.A. ("Lender") in the amount of $263,112. (*Id.* at 13). On February 23, 2006, a deed of trust was recorded on the property. That same day, a non-party to the suit issued a STGC title insurance policy (the "policy") for the deed, identifying March 2, 2006, as the effective date of the policy. (*Id.* at 29).

**James C. Mahan**
**U.S. District Judge**

The policy contained a list of exclusions from coverage, notably exclusion 3(d), purporting to limit coverage for any claim on the title "attaching or created subsequent to [d]ate of [p]olicy." (*Id.* at 77). The policy also included a CLTA Endorsement Form 100, providing additional coverage to the insured for "loss or damage sustained by reason of" conditions, covenants, and restrictions on the insured property. (*Id.* at 37). The property was and is subject to the Preserve Homeowner's Association ("HOA") Declaration of Covenants, Conditions, and Restrictions ("CCR"). (*Id.* at 11).

On July 30, 2012, the HOA recorded a lien on the property after borrower failed to pay HOA assessment in violation of the HOA CCR. (*Id.* at 15). After notices of default and of a trustee's sale, the property was sold to SFR Investments in a non-judicial foreclosure sale on October 24, 2013. (*Id.* at 15–16). In November 2014, the bank submitted a title insurance claim under the policy, which STGC denied in September 2017. (*Id.* at 16–17). The deed was later assigned to the bank in December 2019. (*Id.* at 285). SFR Investments filed an underlying quiet title action in this court against the bank in October 2020 that is currently stayed pending a certified question to the Nevada Supreme Court. *See* (ECF No. 5 at 6).

On September 14, 2021, the bank filed its complaint in this action in state court. (ECF No. 1-1). STGC filed a petition for removal with this court on October 11, 2021. (*Id.*) Subsequently, on August 22, 2022, this court granted STGC's motion to dismiss and dismissed all claims against it. (ECF Nos. 36; 36). The bank now moves for reconsideration of that order. (ECF No. 37).

**II.     Legal Standard**

Rule 59(e) "permits a district court to reconsider and amend a previous order[;]" however, "the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotations omitted). A motion for reconsideration "should not be granted, absent highly unusual circumstances." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

**James C. Mahan**
**U.S. District Judge**

On one hand, a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc.*, 229 F.3d at 890. On the other hand, "[a] movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts. A movant who repeats arguments will be subject to appropriate sanctions." LR 59-1(b).

Thus, the Ninth Circuit has provided that "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); Fed. R. Civ. P. 60(b). "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

**III.  Discussion**

As an initial matter and with good cause appearing, the court GRANTS the bank's motion to file supplemental authority. (ECF No. 40). The two decisions, while not binding on this court, are "persuasive [and] helpful," even if the court ultimately disagrees with their outcomes. *See Alps Prop. & Cas. Ins. Co. v. Kalickli Collier, LLP,* 526 F.Supp.3d 805, 812 (D. Nev. 2021).

With this initial matter resolved, the court now considers the bank's motion to reconsider its prior order. The court finds no reason to reconsider its decision and DENIES the bank's motion.

The bank does not provide a single controlling authority to support its position that the court committed clear error in its dismissal. It provides a litany of treatises that purport to support its position and argues that an endorsement serves as the ultimate authority in an insurance contract superseding all other provisions, no matter how clear and unambiguous they may be. *See* (ECF No. 37 at 3–4). It seeks a second bite at the apple on arguments that this court has summarily denied, and it does so through a highly disfavored procedural vehicle.

**James C. Mahan**
**U.S. District Judge**

The bank inartfully argues in summary that application of exclusion 3(d) "was clear legal error because endorsements [sic] cannot be applied [sic] endorsements. The law is well-established on this point. The basic insurging [sic] provision broadly insurer [sic] the priority of the insured mortgage," and endorsements alter the scope of coverage under the policy by "mooting" specific policy language (ECF No. 39 at 2). As the court reads this thoroughly unproofread passage, the bank essentially invokes the same argument it raised in its response to the motion to dismiss. *See* (ECF No. 31 at 7–8) (arguing that endorsements control over exclusions).

An insurance policy is a contract. *Pioneer Title Ins. v. Cantrell*, 286 P.2d 261, 263 (Nev. 1955). It must be read as a whole. *Am. Excess Ins. Co. v. MGM*, 729 P.2d 1352, 1354 (Nev. 1986). Exclusion 3(d) excludes coverage for claims arising from liens "attaching or creating subsequent to the Date of Policy." (ECF Nos. 1-1 at 77; 35 at 4). This is fatal to the bank's claim. The policy clearly states that any lien arising after the issuing date is not covered.

Even revisiting the bank's argument that the endorsement supersedes this clear language does not change this court's analysis. Endorsements *can* add additional coverages in insurance policies. *See* (ECF No. 1-1 at 37) ("*Generally,* endorsements will provide for additional coverage. . ." (emphasis added)). Endorsement 100, the provision at issue here, states it "does not modify any of the terms and provisions" of the policy, including the date of policy. (ECF No. 5-2 at 3).

This language is, again, clear and unambiguous. Exclusion 3(d) specifically exempts after-arising liens from coverage. Endorsement 100 then goes on to explicitly state that it does not modify any terms of the original policy—where exclusion 3(d) is located. Thus, there is no conflict in the terms such that the bank's non-binding authority would necessitate reconsideration of this court's order. If STGC had meant for Endorsement 100 to supersede the policy, there would not be language in the Endorsement specifically disclaiming modification of the policy.

Title insurance is necessarily a retrospective device. It cannot function prospectively or else it would subvert the title system entirely. Title insurance is premised on protecting against risks that are "already in existence on the date the policy is issued." *Philadelphia Indem. Ins.*

*Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 400 (7th Cir. 2014) (quoting *GMAC Mortg., LLC v. First Am. Title Ins. Co.*, 985 N.E.2d 823, 828 (Mass. 2013)).  To force a title insurer to protect against title defects that do not—and in this case, could not—exist on the date the policy was issued would wholly undermine the business model of title insurance.  It would allow the insured to pay a one-time fee that guaranteed defense of *any* future title dispute, effectively outsourcing all legal claims at a flat rate upon issuance of the policy.

Finally, STGC did not waive its exclusion 3(d) position and it is not estopped from relying on that position.  The doctrines of waiver and estoppel cannot extend the scope of coverage of an insurance policy, and title insurance provides no coverage for future title defects.  *See Sewell v. Capital One Fin. Corp.*, 401 F.Supp.3d 1159, 1175 (D. Nev. 2019) (citing *Walker v. Am. Ins. Co.*, 254 F.Supp. 736, 741 (D.D.C. 1966)).  The bank raised this argument in its responses to the motion to dismiss, and it may not now present those arguments again.  LR 59-1(b).

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the bank's motion to file supplemental authority (ECF No. 40) be, and the same hereby is, GRANTED

IT IS FURTHER ORDERED that the bank's motion to reconsider (ECF No. 37) be, and the same hereby is, DENIED.

DATED November 28, 2022.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**